IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| MY NATIONAL TAX & INSURANCE SERVICES, INC., <br><br> Plaintiff, <br><br> v. <br><br> H&R BLOCK TAX SERVICES, INC., <br><br> Defendant. | Civil Action No. 8:10-cv-02411-AW |

**MEMORANDUM OPINION**

Plaintiff My National Tax & Insurance Services, Inc. brings this action against Defendant H&R Block Tax Services, Inc. Plaintiff asserts a claim for breach of contract. Pending before the Court is Defendant's Motion for Summary Judgment. The Parties have fully briefed the matter and the Court deems no hearing necessary. For the reasons that follow, the Court **GRANTS** Defendant's Motion for Summary Judgment.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

This case arises from a series of business negotiations that culminated in Plaintiff My National Tax & Insurance Services, Inc. ("My National") becoming a franchisee of Defendant H&R Block Tax Services, Inc. ("HR Block"). The Court takes the following facts from its prior Memorandum Opinion, supplementing them as necessary to reflect subsequent developments in the record.

In June 2006, HR Block representative Carroll Koon ("Koon") approached My National regarding converting its business into an HR Block franchise. Shortly thereafter, My National

and HR Block started negotiating the terms of the conversion. On July 6, 2007, the Parties entered into a Conversion Agreement ("Agreement") for the conversion of My National into an HR Block franchise. Doc. No. 49-3. The Agreement provides that HR Block must pay My National an amount up to $450,000.00 in two installments. Specifically, the Agreement provides that HR Block owed the initial payment of $225,000 on its effective date. The Agreement further provides that HR Block must deliver the final payment as calculated in accordance with section 1(b) of the Agreement no later than sixty days following its first anniversary. Under section 1(b), the final payment is calculated by dividing the actual number of federal tax returns that My National prepares from the Agreement's effective date through its first anniversary by the performance target of 4,105 returns and multiplying the quotient by $225,000. *See* Doc. No. 49-3 at 2 § 1(b).

On September 3, 2008, HR Block notified My National that it had calculated My National's final payment and that it planned to deposit it in My National's bank account. Doc. No. 49-6. HR Block calculated the final payment as $72,241.17. Doc. No. 49-5. HR Block arrived at this figure by dividing the number of returns that My National prepared (1,318) by the performance target (4,105) and multiplying by $225,000. *See* Doc. No. 49-4 at 10. My National acknowledges that it prepared 1,318 returns during the relevant time and that HR Block's calculations are accurate. *See id.*

On the same day, My National's president, Leonette M. Bassi, emailed HR Block and stated that she would not accept the $72,241.17 because My National was entitled to a higher conversion amount. Doc. No. 49-7. In the following two-month period, Bassi made several refusals to accept the tendered conversion amount and repeatedly attempted to negotiate a higher

amount. However, on January 23, 2009, Bassi told HR Block in a series of emails that My National would accept the tendered amount. *See* Doc. No. 49-26.

On July 6, 2010, My National sued HR Block in the Circuit Court for Prince George's County, Maryland, asserting claims for fraud and breach of contract. Shortly after it removed the case, HR Block moved for a more definitive statement. Doc. No. 12. The Court granted HR Block's motion in an Order issued on July 8, 2011. Doc. No. 20. In its Order, the Court ruled that My National failed to plead its fraud claim with particularity.

A couple of weeks later, My National filed an Amended Complaint asserting claims for fraud and breach of contract. Doc. No. 23. HR Block moved for dismissal of the fraud claim. In a Memorandum Opinion and Order issued on January 11, 2012, the Court dismissed My National's fraud claim with prejudice.

My National's breach of contract claim went into discovery. At the close of discovery, HR Block filed a Motion for Summary Judgment. Doc. No. 49. This Motion is ripe.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate only "if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A disputed fact

presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Material disputes are those that "might affect the outcome of the suit under the governing law." *Id.*

Although the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in his or her favor, the nonmoving party cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." *See Beal v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Further, if a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). Finally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Firefighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

### III. LEGAL ANALYSIS

My National sets forth two theories to support its breach of contract claim. The first is that the rendered conversion amount of $72,241.17 does not represent the true amount that HR Block owed My National under the Agreement. The second is that My National failed to pay the final amount in a timely fashion. Both of these theories are meritless.

The ordinary principles of contractual interpretation in Maryland are well-established. The Court of Appeals of Maryland has "long adhered to the objective theory of contract interpretation." *Myers v. Kayhoe*, 892 A.2d 520, 526 (Md. 2006) (citing *Traylor v. Grafton*, 332 A.2d 651, 675 (1975)). "'A court construing an agreement under [the objective theory] must first determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated.'" *Id.* (quoting *Dennis v. Fire &*

*Police Emps. Ret. Sys.*, 890 A.2d 737, 747 (2006)). "[W]hen the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed." *Id.* (quoting *Dennis*, 890 A.2d at 747). In other words, "[a] court will presume that the parties meant what they stated in an unambiguous contract, without regard to what the parties to the contract personally thought it meant or intended it to mean." *Maslow v. Vanguri*, 896 A.2d 408, 420 (Md. Ct. Spec. App. 2006) (citations omitted).

Under Maryland law, a "tender is excused where the obligee has manifested to the obligor that tender, if made, will not be accepted, or that a tender would be at most merely a futile gesture." *Chesapeake Bay Distrib. Co. v. Buck Distrib. Co., Inc.*, 481 A.2d 1156, 1158 (Md. Ct. App. 1984) (citation omitted). "A tender is defined as an offer to perform a condition or obligation coupled with the present ability of immediate performance, so that if it were not for the refusal of cooperation by the party to whom tender is made, the condition or obligation would be immediately satisfied." *Id.* (citation and internal quotation marks omitted).

In this case, a reasonable juror could only conclude that the $72,241.17 conversion amount reflected the true amount that HR Block owed My National under the Agreement. The Agreement expressly provides that the final payment is calculated by dividing the actual number of federal tax returns that My National prepares during the relevant time by the target of 4,105 and multiplying by $225,000. It is undisputed that My National prepared 1,318 tax returns and that HR Block's calculations are correct (1,318/4,105 x $225,000 = $72,241.17). The clarity of the Agreement's language, coupled with these undisputed facts, ends the inquiry.

Nor could a reasonable juror conclude that My National failed to pay the conversion amount in the time that the Agreement prescribes. The Agreement provides that HR Block must deliver the final payment no later than sixty days following its first anniversary, which is

September 4, 2008. Here, on September 3, 2008, HR Block notified My National that it had calculated My National's final payment of $72,241.17 and planned to deposit it in My National's bank account. On the same day, however, My National refused to accept the $72,241.17, baselessly asserting that it was entitled to a higher amount. Subsequently, My National refused on several occasions to accept the tendered amount. A reasonable juror could only conclude that HR Block's actions constitute an offer to perform an obligation coupled with the present ability of immediate performance such that, had My National not refused, the obligation would have been immediately satisfied. Consequently, a reasonable juror could only conclude that HR Block timely tendered full payment.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment. A separate Order follows.

| February 7, 2013 | /s/ |
|---|---|
| Date | Alexander Williams, Jr.<br>United States District Judge |